# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **SHERON DAVIS,** Plaintiff<br><br>vs<br><br>**MACON COUNTY, TENNESSEE,** Defendant | Case No.<br><br>Hon. |

# COMPLAINT

Plaintiff, for his complaint against Defendant, states as follows;

## INTRODUCTION

This action is brought by Plaintiff pursuant to 42 U.S.C. §1983 to redress the violation by Defendant of Plaintiff's rights secured by the Eighth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1981.

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 to hear Plaintiff's claims arising under the Constitution and laws of the United States and under 28 U.S.C. § 1343 to hear Plaintiff's claims to recover damages and to secure equitable relief under any Act of Congress providing for the protection of civil rights.

2. Venue is appropriate in the Middle District of Tennessee under 28 U.S.C. § 1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to this claim occurred.

## PARTIES

3. Plaintiff Sheron Davis is a resident of Nashville, Davidson County, Tennessee and is African American.

4. Defendant Macon County is a political subdivision of the State of Tennessee and employs judicial commissioners to act as magistrates as allowed under Tennessee law for the

1

determination of probable cause and the setting of bail. Macon County also employees a Circuit Court Clerk who is authorized by Tennessee law to set bail when no judges can be found. Both judicial commissioners employed by defendant county and the one circuit court clerk are white.

## GENERAL ALLEGATIONS

5. On or about October 14, 2012, Plaintiff and two co-workers were arrested in Macon County, Tennessee by Detective Donnie Crawford of the Macon County Sheriff's Office and charged with theft of property over $1000 and attempted theft of property over $10,000, both violations of T.C.A. 39-14-103.

6. Plaintiff and his co-workers, Anthony Singleton and Otis Singleton, are all African American.

7. Detective Crawford presented the charges to Judicial Commissioner Phillip Spears Sr. who found probable cause and issued the arrest warrant.

8. Unlike the vast majority of other cases, however, Judicial Commissioner Spears Sr. refused to interview the plaintiff to ascertain his likelihood to not appear in court pursuant to Tennessee law but instead wrote "Hold For Judge Set Bail" and effectively ordered the plaintiff to be held without bail until he could be scheduled to appear before a judge.

9. In sworn testimony taken on October 13, 2010, Phillip Spears Sr. testified that he usually puts "hold for judge" when he does not want the decision to admit someone to bail to be on his conscience. "I feel like that the judge needs to make that decision because I don't want to let them out and them go kill somebody. I don't want nothing to be on my conscience. ... [A] lot of times you have to go on a gut feeling [as to whether you want to defer to a judge]. Additionally, Mr. Spears could not explain how a dollar amount of bail is related to a perceived threat to the community if an arrestee was released pretrial and instead testified that if he perceived a danger to the community, he "would rather for the judge to set his bail, to hold him for the judge to set his bail."

10. In sworn testimony on October 13, 2010, the only other Macon County judicial commissioner, Phillip Spears Jr. (who is the son of Phillip Spears Sr.), testified that "hold for judge" to set the bail was limited to those "great" offenses that involved injury to a

2

victim, such as murder, aggravated assault or serial rape.

11. Judicial Commissioner Spears Sr. knew that at the time he declined to set bail that all the judges were away at an annual conference and knew that it was possible the plaintiff would possibly spend another seven days in jail, maybe more, before he would be able to see a judge.

12. Judicial Commissioner Spears Sr. also ordered the other two arrestees, Anthony and Otis Singleton, held without bail.

13. Lisa Cothron, an attorney in Macon County who was contacted by an acquaintance of the plaintiff, called the Circuit Court Clerk's office and inquired as to whether the plaintiff's bond had been set. An Assistant Clerk replied that no bond had been set because the plaintiff and the two other arrestees were "good runners" and that the judge was out of town. The deputy clerk then informed Ms. Cothron that the case would be brought up the following Wednesday or 10 days from their arrest.

14. In actuality, their court date was not scheduled until November 17, 2012, thirty four days after their arrest.

15. On or about October 19, 2012, a Sheriff's deputy, Sharon Racki, confirmed by telephone that the plaintiff was held without bail and stated that she had never seen this on a theft charge. She also confirmed that no court was scheduled for that week and the next court date for the plaintiff was set for November 7.

16. On or about October 19, 2012, a deputy clerk at the Macon County Circuit Court Clerk's office named Teresa confirmed that there were no judges in town. She also stated that if no judge is in town the clerk's office never sets bail. She also stated that Judge Witcher would be in town the following Monday (which would have been October 22, 2012).

17. Macon County judicial commissioners routinely set bail for those arrested for theft of property. For example
    a. On February 5, 2009, Miguel Cervantes had his bond set at $63,000 on a charge of theft and burglary.
    b. On March 4, 2009, Amanda Hicks Taylor had her bond set at $2000 on charges of aggravated burglary and theft of property.

c. In April, 2009, Rebecca Baldwin had her bond set at $4000 on charges of vandalism, theft of property and aggravated burglary.

d. In April, 2009, Foster Cooper had his bond set at $2000 on a charge of theft of property.

e. In April, 2009, Tammy Stafford had her bond set at $2500 on a charge of theft of property.

f. On April 2, 2009, Layla DeBarbieris had her bond set at $500 on a charge of theft of property.

g. In May, 2009, Annie Mandaback had her bond set at $12,500 on three counts of theft, criminal impersonation and forgery.

h. On June 11, 2009, Thomas Trammel had a bond set at $1000 on a charge of theft of property.

i. In June, 2009, Ranely Williams had a bond set at $10,000 on a charge of theft over $5000.

j. On July 28, 2009, Kenny Perry had a bond set at $5500 on charges of theft of property over $1000, driving on suspended license, and possession of a Schedule VI drug.

k. On June 29, 2009, Christopher Carr had a bond set at $8500 on charges of theft over $1000, public intoxication, and possession of a Schedule III drug.

l. On March 30, 2010, Steven Page had a bond set at $3000 on charges of theft of property and criminal trespass by Judicial Commissioner Phillip Spears Sr.

m. On March 25, 2010, Matthew Likens had a bond set at $1000 for a charge of theft over $1000 by Phillip Spears Sr.

n. On March 30, 2010, Brandon Page had a bond set at $3000 on a charge of theft of property by Phillip Spears, Sr.

o. On April 11, 2010, Daniel Thompson had a bond set at $8000 on charges of aggravated burglary, theft over $500, aggravated criminal trespass and vandalism by Phillip Spears Jr.

p. On June 14, 2010, Justin Porter had a bond set at $15,000 on charges of theft over

4

$1000 and fraudulent transfer of motor vehicle.

18. Theft of property over $1000 is a Class D felony and theft of property over $10,000 is a Class C felony under Tennessee law. Attempted theft of property over $10,000 would also be a Class D felony (one class lower than the unsuccessful offense). Other Class C felonies include aggravated assault, aggravated burglary, possession or sale of cocaine (schedule II) under .5 grams.

19. Dozens of individuals arrested and charged with other Class C and greater felony offenses were granted bail by Macon County judicial commissioners. For example,
    a. On January 15, 2010, Kevin King had a bond set at $75,000 on charges of attempted aggravated child endangerment (two counts, both Class B felonies), and unlawful possession of a weapon by a convicted felon.
    b. On January 25, 2010, Jeff Strong had a bond set at $4000 on four counts of aggravated assault by Phillip Spears Jr.

20. Even arrestees from out of state were routinely given a bond.
    a. In June, 2009, Isidrio Rivera from Washington D.C. was given a bond of $1000 on charges of no driver license and violation of financial responsibility.
    b. On June 24, 2010, Isreal Gonzalez from Ohio had a bond set at $500,000 on charges of rape of a child (Class A felony) and solicitation of a minor by Phillip Spears Jr.

21. An examination of mittimuses for the months of January to June 2010, totaling 728 individual bail determinations, shows that there was not a single individual charged with theft that was denied bail or noted as "hold for judge".

22. At the time Plaintiff was in the Macon County jail, there were only one or two black inmates other than the plaintiff and the two co-workers arrested with him.

23. Plaintiff could hear and see from his jail cell that the judicial commissioner was setting bond for other arrestees, all of whom were white.

24. Plaintiff finally had his bail set by a general sessions judge at $50,000, an amount that was pulled out of thin air and without considering any of the statutory factors. In total, Plaintiff spent approximately a week and two days held in the Macon County jail without

bail.

## COUNT 1

(42 U.S.C. §1983 - Macon County)

25. Defendant Macon County, by knowingly and deliberately instituting and approving of a system where bail is arbitrarily and subjectively set by a judicial commissioner, who has final decision making authority as to bail at the time of arrest, based on something other than the statutory elements or an individualized determination of the need for bail, violated the Constitutional rights of Plaintiff.

26. Denying bail or requiring bail in an amount higher than that which is individually calculated to serve as an assurance of the presence of a particular person accused of an offense as required by the Bail Reform Act is excessive.

27. In the case of Plaintiff Sheron Davis, a Macon County judicial commissioner, who at the time was the final decision maker, holding him without bail while granting bail to others similarly situated in terms of charge could only have been because of Plaintiff's race as others who were white were admitted to bail.

28. Additionally, admitting others to bail who were similarly situated as to the class of charge while denying bail to the plaintiff effectively made plaintiff's lack of bail grossly disproportionate to the gravity of the offense.

29. Plaintiff's lack of bail was excessive relative to the charged offense or based on the particular facts of his case.

30. Plaintiff's bail was set over seven days after his arrest while others charged with offenses with like penalties had bail set the day of their arrest by the judicial commissioner.

31. Since the judicial commissioner never questioned the plaintiff and never considered all the statutory factors related to risk of non-appearance, the facts available to the judicial commissioner were too weak to justify the outright denial of bail and were impermissibly based on race.

32. In effect, the lack of bail was not normal for charges like those brought against the plaintiff or for offenses with like penalties and the judicial commissioner relied on impermissible factors, such as race, in denying bail.

33. Accordingly, Plaintiffs Constitutional rights were violated as follows:
    a. Excessive bail in violation of the Eighth Amendment because
        i. the denial of bail by the judicial commissioner was excessive relative to the charged offense and based on the particular facts of plaintiff's case;
        ii. the denial of bail by the judicial commissioner was based on impermissible factors such as race;
        iii. the denial of bail by the judicial commissioner was excessive in terms of what is normal for like charges;
        iv. the denial of bail was not based on an individualized assessment of the plaintiff's likelihood of non-appearance or danger to the community.
    b. Violation of equal protection under the Fourteenth Amendment because
        i. the denial of bail by the judicial commissioner was based on impermissible factors such as race;
        ii. the denial of bail was different for others similarly situated in terms of class of offense;
        iii. the denial of bail was different for others similarly situated in terms of class of offense based on which judicial commissioner made the decision.
34. As a direct and proximate result of the acts of Defendant, Plaintiff had his Constitutional right against the setting of excessive bail and his right to equal protection violated and suffered loss of income.

### COUNT 2
(42 U.S.C. §1981 - Macon County)

35. Plaintiff is a member of a protected group, that is, African American.
36. Decision makers within Macon County government, including but not limited to judicial commissioners, acting under color of law, developed and maintained policies or customs and practices exhibiting deliberate and intentional violation of Plaintiff's statutory and constitutional rights.
37. It was the policy and custom of Macon County judicial commissioners to intentionally discriminate against African Americans in admitting them to bail.

7

Case 2:13-cv-00105   Document 1   Filed 10/11/13   Page 7 of 8 PageID #: 7

38. Defendant's discriminatory conduct abridged a right enumerated in 42 U.S.C. 1981, that is, the right to make and enter into contracts, namely bond contracts for the purpose of making bail the same as whites.

39. As a direct and proximate result of the acts of Defendant, Plaintiff had his Constitutional right against the setting of excessive bail and his right to equal protection violated and suffered loss of income.

Therefore, Plaintiff requests that this Court award:

1. Compensatory damages to Plaintiff against Defendant Macon County in an amount to be determined at trial;
2. A permanent injunction against Macon County requiring that judicial commissioners employed by the county determine bail on an individualized basis and limited to the purpose of ensuring a defendant's presence in court and of ensuring the safety of the community based on objective criteria;
3. Reasonable attorney's fees;
4. Cost of suit and such other and further relief as the court deems just and proper.

Respectfully Submitted,

/s/ Jerry Gonzalez
Jerry Gonzalez (18379)
Attorney for Plaintiff
2441-Q Old Fort Parkway
No. 381
Murfreesboro, TN 37128
615-360-6060
jgonzalez@jglaw.net